[No. A130540. First Dist., Div. Three. Aug. 17, 2011.]

MATTHEW ZELASKO-BARRETT, Plaintiff and Appellant, v.
BRAYTON-PURCELL, LLP, Defendant and Respondent.

COUNSEL

Arthur Chambers for Plaintiff and Appellant.

Littler Mendelson, Alan S. Levins, Kurt R. Bockes and Rachelle L. Wills for Defendant and Respondent.

OPINION

**POLLAK, Acting P. J.**—Plaintiff Matthew Zelasko-Barrett, a former law clerk at the law firm of defendant Brayton-Purcell, LLP, appeals from an adverse summary judgment on his claim for failure to pay him overtime wages and provide other benefits allegedly required by California law. He alleges that the law firm incorrectly classified him as employed in a professional capacity, exempting the firm from the obligation to pay him overtime wages and provide other benefits. We agree with the trial court that although plaintiff had not yet been licensed to practice law in California, he was nonetheless a law school graduate and performed duties that brought him within an exemption for those engaged in a learned profession. His claim for additional wages and benefits therefore was properly rejected.

## Background

Brayton-Purcell, LLP (Brayton), is a law firm with approximately 180 employees headquartered in Novato. The firm primarily represents individuals seeking damages for personal injuries caused by exposure to defective or harmful products such as asbestos, tobacco, mold, and defective medical drugs. Following plaintiff's graduation from law school and before passing

the bar examination, between August 2007 and June 2009, plaintiff was employed by Brayton in a position classified by the firm as a "Law Clerk II." (The firm employed and classified a law student who had not yet graduated from law school as a "Law Clerk I.") His status during this time period is in question in this action. Upon his admittance to the bar, plaintiff was designated as an associate attorney in the firm; he raises no questions concerning the salary and benefits he received in that status.

During the period that plaintiff was employed in the Law Clerk II position, he performed tasks customarily performed by junior attorneys. Although he was supervised by a licensed attorney and did not sign his name to pleadings, he drafted pleadings and discovery demands and responses, did legal research and drafted memoranda of points and authorities and supporting declarations, interviewed witnesses, assisted in deposition preparation and interacted with opposing counsel concerning discovery issues. In granting Brayton's motion for summary judgment, the trial court sustained objections to numerous statements in plaintiff's opposing declaration denying that he was employed in a professional capacity and performed work covered by the professional exemption.

Following his voluntary departure from the law firm, plaintiff filed this action asserting numerous causes of action based on the premise that as a Law Clerk II he had been misclassified as an employee to whom the provisions of California's Industrial Welfare Commission wage order No. 4-2001 were inapplicable. The various causes of action allege, among other things, that he was wrongfully denied overtime wages, waiting time penalties, and meal and rest breaks. Following discovery, Brayton successfully moved for summary judgment on the ground that in the Law Clerk II position plaintiff had been an "exempt professional employee." Plaintiff has timely appealed.

## Discussion

### Regulatory framework

■ The Labor Code, which imposes overtime compensation and other requirements on employers (e.g., Lab. Code, §§ 510, 512), authorizes California's Industrial Welfare Commission (IWC) to establish exemptions from the overtime requirements for executive, administrative, and professional employees, "provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." . (Lab. Code, § 515, subd. (a).) The IWC has promulgated wage order No. 4-2001, applicable to all persons employed in

professional, technical, clerical, mechanical, and similar occupations. (Cal. Code Regs., tit. 8, § 11040.)[1] The wage order specifies that its provisions governing minimum wages, overtimes wages, and other employment conditions do not apply to employees falling within exemptions for persons employed in administrative, executive, or professional capacities, as defined in the wage order.

The wage order defines the professional exemption, as relevant here, as applicable to an employee: "(3) . . . [¶] (a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or [¶] (b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, 'learned or artistic profession' means an employee who is primarily engaged in the performance of: [¶] (i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work; or [¶] (ii) . . . ; and (iii) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time." (§ 11040, subd. 1(A)(3).) The exemption provided in subdivision 1(A)(3)(a) is sometimes described as the "enumerated professions" exemption and the exemption in subdivision 1(A)(3)(b) as the "learned professions" exemption. (*Campbell v. PricewaterhouseCoopers, LLP* (E.D.Cal. 2009) 602 F.Supp.2d 1163, 1172, revd. (9th Cir. 2011) 642 F.3d 820 (*Campbell*).) To come within either, the employee must also be one: "(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in subparagraphs (a) and (b). [¶] (d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week." (§ 11040, subd. 1(A)(3).) Section 11040, subdivision 1(A)(3) also provides: "(e) Subparagraph (b) above is intended to be construed in accordance with the following provisions of federal law as they existed as of the date of this wage order: 29 C.F.R. Sections 541.207, 541.301(a)–(d), 541.302, 541.306, 541.307, 541.308, and 541.310."

---

[1] All references to section 11040 are to California Code of Regulations, title 8, section 11040.

*Analysis*

The trial court held that the undisputed facts establish that as a Law Clerk II in the Brayton firm, plaintiff was an exempt employee under section 11040, subdivision 1(A)(3)(b), the so-called learned professions exemption.[2] Plaintiff's principal argument in challenging this ruling is that because law is one of the enumerated professions in section 11040, subdivision 1(A)(3)(a), for which licensure is required, he cannot be deemed to have been employed in a law-related professional capacity unless he was licensed to practice law. He argues: "Brayton took advantage of the exemption for an employee who was not so licensed by trying to skirt a fine line between claiming unlicensed practice of law and the exemption. In this instance, the Labor Board has spoken: if you have a license, you are exempt. If you don't have a license, you are not exempt, at least in that particular area." Because "the clear language of subsection (a) . . . specifically mentions the law as a recognized profession which requires a license," he contends that subdivision 1(A)(3)(b) cannot be understood to exempt law-related employment without a license to practice law.

For this contention, plaintiff has relied heavily on the decision of a federal district court in *Campbell*. That decision unquestionably provided colorable support for plaintiff's position. However, subsequent to the conclusion of briefing in this case, the Ninth Circuit Court of Appeals reversed the district court decision. (*Campbell, supra*, 642 F.3d 820.) That case now provides compelling additional support for the trial court's decision in this case. We concur in the Ninth Circuit's analysis.

*Campbell* questions whether associates in an accounting firm's "attest division" come within the professional exemption in wage order No. 4-2001. "Attest associates" are unlicensed and assist certified public accountants in performing financial audits. The defendant accounting firm argued that "unlicensed employees who assist licensed accountants, may be exempt under subsection (b), the 'learned professional' exemption. Plaintiffs argue that, *inter alia*, defendant's interpretation . . . renders subsection (a), the 'enumerated professional' exemption, surplusage. Defendants reply that excluding the enumerated professions from the learned professions would, *inter alia*, contradict settled expectations about who may be exempt—for example, plaintiffs' reading would mean that new law firm associates awaiting their bar passage results were non-exempt employees." (*Campbell v.*

---

[2] Brayton contended below that the exemptions for those employed in administrative and professional capacities were both applicable to plaintiff's employment. The trial court held that the exemption for professional employees applied and made no ruling with respect to the applicability of the exemption for administrative employees. We similarly limit our consideration to the exemption for those working in a professional capacity.

*PricewaterhouseCoopers, LLP, supra*, 602 F.Supp.2d at p. 1172.) The district court considered both arguments to "carry great force" (*ibid.*) but ultimately agreed with the plaintiffs that if the attest associates did not come within section 11040, subdivision 1(A)(3)(a) because unlicensed, they could not be exempt under subdivision 1(A)(3)(b). After an extended analysis of the history of wage order No. 4-2001, the district court based its conclusion on the premise that reading subdivision 1(A)(3)(b) to include members of the professions enumerated in subdivision 1(A)(3)(a) would render subdivision 1(A)(3)(a) superfluous, and on the policies of interpreting statutory provisions to avoid surplusage and construing ambiguous statutes in favor of employees. (*Campbell v. PricewaterhouseCoopers, LLP, supra*, 602 F.Supp.2d at p. 1181.)

The Ninth Circuit found no ambiguity in the language of the wage order, nor do we. "The professional exemption's language is unambiguous. The exemption plainly allows accountants to fall under subsection (b), subject to meeting the specific requirements of that subsection." (*Campbell, supra*, 642 F.3d at p. 826.) As the court pointed out, the wage order states explicitly that a person employed in a professional capacity means any employee who meets all of the requirements of section 11040, subdivision 1(A)(3)(a) "*or*" of subdivision 1(A)(3)(b). Moreover, "the exemption frames its application in terms of individual employees, rather than whole professions. This undercuts Plaintiffs' argument that the IWC contemplated excluding the entire accounting profession from subsection (b)." (*Campbell*, at p. 826.)

As the district court itself pointed out, the learned professions exemption was first added to the wage order in 1989 (Cal. Code Regs., tit. 8, former § 11040(1)(A) (1989)) in response to concerns that emerging occupations were not recognized under the existing wage order. According to the IWC's explanation for the addition, "the IWC decided that the professional exemption relied too much on credentialism." (IWC, Statement As To Basis Upon Which Industrial Welfare Commission Order No. 4-89 is Predicated (1989) § 1, Applicability.) As the district court acknowledged, "[t]he statement of basis demonstrates that one purpose of the learned professions provision is to expand the scope of the exemption beyond the enumerated professions." (*Campbell v. PricewaterhouseCoopers, LLP, supra*, 602 F.Supp.2d at pp. 1176–1177.)[3]

■ The federal regulations after which section 11040, subdivision 1(A)(3)(b) was explicitly patterned (see § 11040, subd. 1(A)(3)(e)) condition the learned professions exemption under federal law upon completion of

---

[3] The district court thought it "unlikely" that the provision was intended to extend to unlicensed individuals within the enumerated professions (*Campbell v. PricewaterhouseCoopers, LLP, supra*, 602 F.Supp.2d at p. 1177), a view rejected by the court of appeals and for which we too find no support.

an advanced course of education, not upon licensure. "The 'learned' professions are described in [29 Code of Federal Regulations part] 541.3(a)(1) as those requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study as distinguished from a general academic education and from an apprenticeship and from training in the performance of routine mental, manual, or physical processes." (29 C.F.R. § 541.301(a) (2001).)[4]

The Ninth Circuit also rejected the district court's premise that including members of an enumerated profession within section 11040, subdivision 1(A)(3)(b) would render subdivision 1(A)(3)(a) superfluous. "[E]ven if the district court is correct that every licensed accountant under subsection (a) could also fall under subsection (b), subsection (a) still serves a distinct purpose. Namely, subsection (a) is *much easier for an employer to prove.* Subsection (a) precludes the factual disputes for which subsection (b) is a veritable hotbed—even in this case—about the employee's actual job duties and whether those duties meet the requirements of a 'learned' or 'artistic' profession. Under subsection (a), once the employer proves the employee is licensed in California and practices one of the eight enunciated professions, the inquiry is over. For that reason, subsection (a) is not superfluous even if every licensed accountant it covers could also fall under subsection (b). Though the two subsections may often end at the same place, subsection (a) is a much easier path." (*Campbell, supra,* 642 F.3d at p. 828.)

▮ The Ninth Circuit's interpretation of section 11040, subdivision 1(A)(3)(b) as it applies to unlicensed accountants is fully applicable to law school graduates working in a law firm before becoming licensed to practice law. The district court concluded its analysis with the caveat that "[t]he court expresses no opinion on whether other specific employees engaged in the enumerated professions, such as law firm associates whose bar admissions are still pending, may be learned professionals." (*Campbell v. PricewaterhouseCoopers, LLP, supra,* 602 F.Supp.2d at p. 1181.) The Court of Appeals pointed out, however, that "the exemption's text and structure do nothing to distinguish accounting from the seven other enumerated professions." (*Campbell, supra,* 642 F.3d at p. 829.) Indeed, the court pointed out that a "significantly troubling result[]" of adopting the district court's

---

[4] The following subdivision of this regulation, not explicitly referred to in section 11040, subdivision 1(A)(3)(e), provides further: "Generally speaking, the professions which meet the requirement for a prolonged course of specialized intellectual instruction and study include law . . . [and] accounting . . . . The typical symbol of the professional training and the best prima facie evidence of its possession is, of course, the appropriate academic degree, and in these professions an advanced academic degree is a standard (if not universal) prerequisite." (29 C.F.R. § 541.301(e)(1) (2001).)

conclusion would be that employers would be required to pay mandatory overtime to "a first-year associate at a California law firm who has taken the California bar exam but not yet received his results." (*Ibid.*) Consistent with the decision of the Ninth Circuit, we conclude that the professional exemption applies to a law school graduate performing legal services but not yet licensed to practice law if all of the conditions of section 11040, subdivision 1(A)(3)(b), (c), and (d) are satisfied.

Plaintiff makes no argument disputing the sufficiency of the evidence Brayton submitted in support of the summary judgment motion to establish that plaintiff's responsibilities satisfied the requirements of section 11040, subdivision 1(A)(3)(b), (c), and (d). According to the declaration of a Brayton partner submitted in support of the motion, "An individual working in the position of 'Law Clerk II' is treated like any junior attorney at Brayton. He or she is expected to utilize the analytical, research and writing skills acquired during their law school education to perform the job functions of the Law Clerk II position. Those job functions include, but are not limited to: (1) drafting pleadings; (2) propounding and managing discovery; (3) independently evaluating and responding to legal arguments raised by opposing counsel in the meet and confer process and/or oppositions to motions filed by Brayton; (4) conducting necessary legal research; (5) using discretion to tailor the facts of Brayton's cases to applicable legal standards and arguments; (6) exercising discretion and independent judgment to identify documents and arguments to be used in deposition and hearings; (7) speaking with opposing counsel, clients, heirs of clients and witnesses; and [(8)] supervising clerical staff to insure discovery documents are completed timely and properly." This evidence, accompanied by additional evidence to the same effect,[5] satisfied Brayton's burden on summary judgment to present evidence negating plaintiff's right to recover by showing that plaintiff worked in a professional capacity within an exemption to wage order No. 4-2001.

Plaintiff contends that contrary evidence included in the declaration he submitted in opposition to the summary judgment motion created a triable issue of material fact as to the applicability of the exemption. Although plaintiff does not explicitly identify the elements within section 11040 subdivision 1(A)(3)(b), or (c) that he contends his evidence disputes, he appears to argue that he has created factual issues as to whether his work was "predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time," as required by subdivision 1(A)(3)(b)(iii),

---

[5] Brayton also provided evidence that is undisputed that the salary paid to plaintiff satisfied the requirements of section 11040, subdivision 1(A)(3)(d).

and whether he "customarily and regularly exercise[d] discretion and independent judgment in the performance of [his] duties" as required by subdivision 1(A)(3)(c).

Plaintiff argues that the court erred in sustaining Brayton's objections to the portions of his declaration that support these contentions. However, the statements in plaintiff's declaration to which objections were sustained were conclusory and insufficient to create a triable issue of fact. Plaintiff opined, for example, that he "was not in a professional capacity," that he "did not perform exempt tasks during my employment as a Law Clerk II," that he "was not engaged in work covered by the professional exemption," and that he was "misclassified." Such conclusory statements, providing no specificity as to the work that plaintiff performed, do not create a triable issue sufficient to defeat a summary judgment motion. (*Hoover Community Hotel Development Corp. v. Thomson* (1985) 167 Cal.App.3d 1130, 1135–1137 [213 Cal.Rptr. 750]; *Barry v Rodgers* (1956) 141 Cal.App.2d 340, 342 [296 P.2d 898].)

■ Plaintiff's declaration did state that his work was supervised, corrected, and approved by a supervising attorney, that "the ultimate decision to craft an argument" was not made by him but by the supervising attorney, and that because he was not yet authorized to practice law there were tasks that he could not and did not perform, such as signing pleadings, making court appearances, and rendering advice to clients. While all of that may well be true, the existence of such limitations and oversight does not negate the fact that his responsibilities required the exercise of discretion and judgment. According to the federal regulations in accordance with which section 11040, subdivision 1(A)(3)(e) states explicitly that subdivision 1(A)(3)(b) is intended to be construed: "The term 'discretion and independent judgment' . . . does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations . . . ." (29 C.F.R. § 541.207(e) (2001).) As the district court observed in *Campbell* when addressing the meaning of "general supervision" in connection with the administrative exemption in wage order No. 4-2001, "Obviously, some degree of supervision is not fatal to exemption." (*Campbell v. PricewaterhouseCoopers, LLP, supra*, 602 F.Supp.2d at p. 1183.) While plaintiff's discretion may have been "limited" as he stated, his duties in collecting and assimilating evidence, performing legal research and drafting legal memoranda nonetheless required that he exercise a significant

level of discretion. Plaintiff provided no description of his responsibilities that would support a finding that his tasks were "routine mental, manual, mechanical, or physical work" or that he did not "customarily and regularly exercise[] discretion and independent judgment in the performance of" his duties. (§ 11040, subd. 1(A)(3)(b)(iii) & (c).)

Plaintiff calls our attention to an opinion letter issued by the Wage and Hour Division of the United States Department of Labor with respect to the regulations under the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.). (U.S. Dept. of Labor, Opn. Letter No. FLSA2006-27 (July 24, 2006) accessed at <http://www.dol.gov/whd/opinion/FLSA/2006/2006_07_24_27_FLSA.htm> [as of Aug. 17, 2011], citing 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.301 (2006).)[6] While authorized interpretations of comparable provisions of federal law may provide some guidance (cf. *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 588–589 [94 Cal.Rptr.2d 3, 995 P.2d 139]; *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]), this opinion letter provides no support for plaintiff's position. The letter opines (inter alia) that a senior legal analyst position in a corporation does not qualify for the professional exemption under the FLSA. The opinion bases this conclusion not on the nature of the work performed by employees in that position but upon the fact that such employees are not required to have obtained a law degree and thus do not satisfy the academic requirements necessary to invoke this exemption. The letter quotes from the federal regulation, "[p]aralegals and legal assistants generally do not qualify as exempt learned professionals because an advanced specialized academic degree is not a standard prerequisite for entry into the field." (29 C.F.R. § 541.301(e)(7) (2006).) Plaintiff here is a law school graduate and thus satisfies the condition that was the focus of that opinion.

More persuasive is the decision of the California Labor Commissioner in the matter of *Yarnykh v. Brayton Purcell LLP*, No. 11-38365CT (Oct. 27, 2010), reaching the same conclusion as do we with respect to another law school graduate not yet admitted to the bar who was employed by Brayton in what appears to have been a position comparable to that filled by plaintiff. The Labor Commissioner concluded that the plaintiff in that case "had acquired knowledge of an advanced type in the field of Law and not of general routine manual labor. The evidence indicates Plaintiff exercised discretion and independent judgment in the preparation for Asbestos civil litigation. Therefore, Plaintiff is found to be an exempt employee and not entitled to overtime pay." (*Id* at pp. 4–5.) We do not invoke the doctrine of collateral estoppel here as plaintiff suggests, nor do we consider this opinion

---

[6] As requested by one party in each instance, we take judicial notice of this opinion letter and of the Labor Commissioner's opinion cited in the following paragraph.

to control our decision, but we do consider the Labor Commissioner's reasoning to support the conclusion we have reached, namely that all of the evidence shows plaintiff to be an exempt employee. (Cf. *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 815 [105 Cal.Rptr.2d 59].) Summary judgment therefore was properly granted to Brayton.

### Disposition

The judgment is affirmed.

Siggins, J., and Jenkins, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 2, 2011, S196734.